NOT DESIGNATED FOR PUBLICATION

No. 129,297

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SEPTEMBER PATRICIA ANN GRAHAM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; CLINTON LEE, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*Merideth J. Hogan*, of Kansas Appellate Defender Office, for appellant.

*Y. Theresa SparrowSmith*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., BRUNS and HURST, JJ.

PER CURIAM: September Patricia Ann Graham was sentenced in late 2022 after she plead guilty to aggravated burglary and aggravated battery. In early 2025, she submitted a motion to withdraw plea beyond the statutorily authorized one-year time limit, arguing that the time limit should be extended due to excusable neglect. The district court denied the motion, finding that Graham failed to establish excusable neglect. On review, we affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2022, Graham pleaded guilty to certain crimes, the details of which are not pertinent to the issues on appeal. Although there is no written plea agreement in the record, the State explained during the plea hearing that Graham agreed to plead guilty to a reduced count of aggravated burglary and a reduced count of aggravated battery. This would result in severity level decreases on the original charges from severity level 4 person felonies to severity level 5 person felonies. Additionally, the State agreed to recommend the mitigated sentence be applied and for the sentences to run concurrent. Finally, a third count of theft was to be dismissed.

During the plea hearing, Graham's attorney confirmed that the plea correctly reflected negotiations, that Graham received an amended complaint, and that counsel had an opportunity to review the amended complaint with Graham. Graham affirmed her understanding of the plea agreement and her desire to change her plea. The district court laid out the two charges along with the possible penalties. Graham once again confirmed that she understood. The district court asked Graham whether she had adequate time to confer with her attorney before entering the plea, and Graham responded, "Yes." The district court immediately followed this inquiry by asking whether Graham needed to speak with her attorney before moving forward. Graham said, "No."

Graham pleaded guilty to the charges in the amended complaint. The district court found that the plea was made freely and voluntarily and that there was a factual basis for the plea.

At the sentencing hearing, the district court informed Graham that her criminal history score was B. Graham had no objection and agreed it was correct. The parties stated that pursuant to the plea agreement, they were recommending the mitigated

sentence of 114 months of prison. Then, Graham made some negative comments about the plea and sentence during the following exchange:

> "THE COURT: All right.
> "Ms. Graham, is there anything you'd like to say before the Court pronounces sentence?
> "[GRAHAM]: Judge, I feel like, you know, there's really not too much for me to say. I feel like that I am being charged unjustly. I feel like that (indiscernible) or the agreed-upon plea agreement was just too much. I'm not the one that hit her but that's near say [sic], you know, so, no, I really don't really have too much to say. I mean, I'll just follow due process after the sentence.
> "THE COURT: All right."

The district court sentenced Graham to a prison term of 114 months. After the sentence was announced, the district judge addressed Graham, "Ms. Graham, I would advise you do have a right to appeal if you disagree with any of the Court's rulings. You should discuss that with your attorney."

Graham did not directly appeal.

More than 20 months later, Graham submitted two pro se filings to the district court, presenting a variety of arguments. The first was styled: "Defendant Does Exercise her Rights For Proper Appeal, Motion as K.S.A. 22-3504 Outlines/Available Defense/Statutes AND Defense Theories." The second was titled: "Motion In Captioned Form Supreme Court Rule 204 Motion thru 22-3504 To Alter Convictions/Ammend [sic] Length of time." Generally, the motions presented citations arguably related to interpretation of the aggravated burglary statute. Graham filed a third pro se document about a month later captioned, "To Preserve The Issue." Among several issues, Graham also alleged, "Defense Lacking in District Process." District court rulings on these

3

motions do not appear in the record, and the merits of these filings are not at issue in this appeal; however, the district court appointed new counsel for Graham.

Graham then filed a motion to withdraw her plea under K.S.A. 22-3210(d) on January 16, 2025. In that motion, Graham acknowledged the one-year filing deadline but argued it should be extended due to the excusable neglect exception in K.S.A. 22-3210(e)(2). Graham based her excusable neglect argument on the following: that she lacked knowledge of her ability to withdraw the plea, that she was pressured into taking the plea without full understanding, that counsel failed to zealously represent her, that she did not understand her criminal history score would be B, and that she did not fill out a plea petition.

The district court held a hearing on the motion where counsel presented arguments but neither party offered evidence. Graham reiterated her arguments from the motion and also included concerns related to the "rushed fashion" of the plea, the proximity in time between the plea and the impending trial, the lack of a written plea petition, and that Graham "basically was uneducated about her ability to withdraw the plea or appeal what had occurred." Additionally, Graham argued her lack of awareness was "partly due to the representation that she received."

The district court denied the motion to withdraw the plea, finding Graham had not established excusable neglect. During the hearing, the district court stated that "simple ignorance of the law really does not amount to or rise to the level of excusable neglect."

After the district court verbally announced its ruling, it asked Graham whether she had any questions for the court. Graham expressed disagreement with the ruling and the effectiveness of her counsel at plea and sentencing:

4

"[GRAHAM]:  Yes, I do want to appeal this decision. You know, like I said, I feel like that I was ineffectively represented by [counsel at the plea and sentencing hearings]. You know, I've done my own investigation as well as to why maybe he was ineffective at that time. You know, I . . . spoke to several people that he had represented and he's done the same thing, you know, didn't advise them of their rights, did not advise them of the law, did not do the investigation to try to—try to, you know—you know, for a lesser charge or try to see the truth. In my matter I feel like he did not do that. You know what I mean? And I feel like that he was—he was essentially on drugs.

"I've spoke to several women about his behavior and maybe why he was acting the way he was acting, speaking fast, not allowing me to talk, and just essentially going with his own—his own ideas. You know what I mean? I told him that—when he came and asked me—when he came and asked me about the situation I told him what had happened. He did not do that. I told him I did not want to sign this plea and he said that— he said that it (indiscernible Zoom audio) me it was (indiscernible Zoom audio)—

"THE [JUDGE]:  Ms. Graham, I . . . don't mean to be rude. I want to stop you because nothing that I have said today, none of my rulings would necessarily prevent you from following up and filing a—a habeas action pursuant to K.S.A. 60-1507. Now, there are some timelines and deadlines associated with that process as well that you may come up against, but that would . . . be your next avenue here is to file a habeas action with the Court. Again, it may or may not be allowed due to the passage of time, but that is something that we can only cross that bridge when we get there.

"So I do understand your sentiments, but we're really not going to take up the merit of whether and to what extent your attorney was ineffective. That will need to be brought up in a separate habeas action, okay?"

Graham now appeals the district court's decision.

THE DISTRICT COURT DID NOT ERR BY DENYING
GRAHAM'S POSTSENTENCING MOTION TO WITHDRAW PLEA

Graham now argues that the district court erred by summarily denying her out of time motion to withdraw plea due to her failure to establish excusable neglect under K.S.A. 22-3210(e)(2).

*Preservation and Standard of Review*

In Graham's motion to withdraw plea, she argued the district court should find excusable neglect. In support, she made a number of claims, as outlined above. The district court rejected those arguments. As a result, the question of whether Graham has shown excusable neglect under K.S.A. 22-3210(e)(2) is preserved for appeal. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022) (Only issues raised below may be raised on appeal.).

There is some inconsistency regarding the standard of review we should apply to this appeal from a motion to withdraw plea dismissed as untimely. The Kansas Supreme Court has applied a de novo standard and an abuse of discretion standard in similar cases. More recently, in *State v. Smith*, 315 Kan. 124, 126, 505 P.3d 350 (2022), the court reviewed an out of time motion to withdraw plea that the movant argued should have been considered due to excusable neglect. The district court had rejected the motion after holding a nonevidentiary hearing, finding Smith had not made an affirmative showing of excusable neglect. On review, the Kansas Supreme Court applied a de novo standard, stating:

> "When a motion to withdraw plea is summarily denied by the district court without an evidentiary hearing, this court applies a de novo review. This is because the appellate court has all the same access to the records, files, and motion as the district court. So, like the district court, it must determine whether the records, files, and

defendant's motion conclusively show that he is entitled to no relief." *Smith*, 315 Kan. at 126.

The court similarly applied a de novo review in *State v. Espinoza*, 319 Kan. 653, 654, 556 P.3d 882 (2024).

On the other hand, *State v. Ellington*, 314 Kan. 260, 496 P.3d 536 (2021), was also an appeal from an out of time plea withdrawal motion with excusable neglect at its core. As in *Smith*, the district court summarily denied Ellington's motion to withdraw plea as failing to demonstrate excusable neglect. In its review, the Kansas Supreme Court stated: "An appellate court will generally not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion." *Ellington*, 314 Kan. at 261; see also *State v. Hill*, 311 Kan. 872, 875, 467 P.3d 473 (2020) ("[W]hen the district court denies a motion to withdraw plea as untimely filed, such decision is reviewed under an abuse of discretion standard.").

Our court has provided brief contrast between these standards by focusing on the nonevidentiary nature of the district court's hearing. "Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. But because the district court summarily denied [the defendant's] postsentence motion to withdraw his plea without taking additional evidence, our review is de novo. [Citation omitted.]" *State v. Gonzalez*, 56 Kan. App. 2d 1225, 1228, 444 P.3d 362 (2019).

Here, both parties argue that the de novo standard of review applies, and we likewise find the de novo standard from *Smith* and *Espinoza* most appropriate. Graham's motion was dismissed due to the district court's legal interpretation and application of

K.S.A. 22-3210(e)(2). Additional evidence was not supplied at the hearing, and the district court did not make factual findings relevant to this appeal.

*Analysis*

Under K.S.A. 22-3210(d)(2), a guilty plea may be withdrawn after sentencing to "correct manifest injustice." Withdrawal, however, is subject to a time limit of one year after appellate jurisdiction concludes. K.S.A. 22-3210(e)(1). This time limit "may be extended by the court only upon an additional, affirmative showing of excusable neglect by the defendant." K.S.A. 22-3210(e)(2).

The time limit under K.S.A. 22-3210(e)(1) is a procedural requirement. *Smith*, 315 Kan. at 127 ("[Defendant] must affirmatively establish excusable neglect . . . or else his motion to set aside plea is out of time and procedurally barred—regardless of the merits."). Excusable neglect under K.S.A. 22-3210(e)(2) must be demonstrated by the defendant before the court can reach the substantive issue of manifest injustice. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

In this case, because Graham did not file a direct appeal, the time limit under K.S.A. 22-3210(e)(1) began to run at the conclusion of appellate jurisdiction—that is, 14 days after the district court judgment pursuant to K.S.A. 22-3608(c). *Davis*, 313 Kan. at 246-47. Graham was sentenced on December 21, 2022. The motion to withdraw plea was filed on January 16, 2025. Even if Graham's earlier pro se motions were considered as raising this issue, she filed those motions on September 30, 2024. In either case, the clock timed out for K.S.A. 22-3210(e)(1) in early January 2023 and now Graham must establish excusable neglect for the court to consider the substantive merits of the motion to withdraw.

Excusable neglect "'implies something more than the unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind.'" *Espinoza,* 319 Kan. at 656 (quoting *Smith*, 315 Kan. at 127). There must be "some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant or his attorney." *Smith*, 315 Kan. at 128 (citing *State v. Davisson*, 303 Kan. 1062, 1069, 370 P.3d 423 [2016]). Moreover, "[e]xcusable neglect resists clear definition and must be determined on a case-by-case basis." *Smith*, 315 Kan. at 127 (citing *Hill*, 311 Kan. at 878).

The Kansas Supreme Court has made it clear that ignorance of the law is not excusable neglect under K.S.A. 22-3210(e)(2). *Davisson*, 303 Kan. at 1067-70. In *Davisson*, the court found the defendant's arguments that he did not know about withdrawal or its related time requirement were merely ignorance of the law and, accordingly, did not constitute excusable neglect. 303 Kan. at 1069-70. Likewise, in her motion to withdraw plea, Graham maintains she "did not know she had the ability to withdraw her plea. . . . She contends that it was only after being incarcerated that she learned that she could challenge the proceedings." Graham's lack of knowledge points to ignorance of the law, not excusable neglect.

An alleged failure on the part of an attorney to inform the defendant of plea withdrawal also does not rise to the level of excusable neglect. *Ellington*, 314 Kan. at 262. In *Ellington*, the court classified the defendant's argument that counsel did not inform him about plea withdrawal as just a version of ignorance of the law. 314 Kan. at 262 (citing *Davisson*, 303 Kan. at 1068-69). "'Excusable neglect requires some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant *or his attorney*.'" (Emphasis added.) *Ellington*, 314 Kan. at 262 (quoting *Davisson*, 303 Kan. at 1069). Further, the *Ellington* court favorably cited two unpublished Court of Appeals cases that rejected attempts by defendants to craft

9

excusable neglect out of claims that counsel had not provided information about plea withdrawal. *Ellington*, 314 Kan. at 262-63 (citing *State v. Edwards*, No. 115,612, 2017 WL 4081449 [Kan. App. 2017] [unpublished opinion], and *State v. Hodge*, No. 116,644, 2017 WL 2709791 [Kan. App. 2017] [unpublished opinion]).

Graham posits this exact argument in her appellate brief: "[H]er counsel did not explain the time frame in which to withdraw her plea . . . ." A similar implication was raised by counsel at the district court hearing, where counsel stated, "[P]artly due to the representation that [Graham] received, she was unaware of her ability to appeal and/or move to withdraw the plea. . . . I do understand why Ms. Graham basically was uneducated about her ability to withdraw the plea or appeal what had occurred." Again, this argument is rooted in ignorance of the law and does not amount to excusable neglect under prevailing caselaw.

Graham also claims error because a written plea or negotiation form was not completed that included a discussion of plea withdrawal and because the district court did not discuss it during the plea colloquy. Just as counsel's failure to inform of the right to withdraw the plea is ignorance of the law and cannot amount to excusable neglect, failure on the part of the district court to inform Graham regarding withdrawal cannot justify excusable neglect. Graham cites *Smith*, 315 Kan. at 129-30, to support her argument that these things are relevant in establishing excusable neglect. But the holding in *Smith* does not stretch so far. In *Smith*, the defendant claimed his counsel did not inform him of his rights to appeal or move to withdraw his plea. The court found that the record contradicted the defendant's claims because it contained a signed advice form that discussed these rights and because the district court advised Smith of his right to appeal. 315 Kan. at 129-30. The *Smith* court did not find that the absence of a written plea form or a showing that the district court did not advise a defendant on plea withdrawal would have provided grounds to demonstrate excusable neglect.

10

While the specifics of plea withdrawal, including the timeline for filing, were not examined by the district court at the plea or sentencing hearings, the district court addressed some of Graham's appeal rights. During the plea hearing, the district court provided, "Do you understand by entering this plea there will not be a trial and therefore your rights on appeal will be greatly limited?" At the sentencing hearing, the district judge informed, "Ms. Graham, I would advise you do have a right to appeal if you disagree with any of the Court's rulings. You should discuss that with your attorney. . . . Do you have any questions, ma'am?" Graham answered, "No." As a final consideration, Graham made the following statement at sentencing that evinced at least some desire to pursue future legal action and suggested an assumption that such options were available, "I feel like that I am being charged unjustly. . . . I'll just follow due process after the sentence."

The defendant must establish excusable neglect before manifest injustice can be considered. *Davis*, 313 Kan. at 248. It is improper for a court to address manifest injustice in an out of time motion to withdraw plea without an express finding of excusable neglect. *State v. Ward*, 317 Kan. 822, 824-25, 539 P.3d 1042 (2023). The court has deemed claims of ineffective counsel and pressure to accept a plea to relate to the merits of plea withdrawal, not excusable neglect. *Smith*, 315 Kan. at 129 ("[Ineffective counsel and pressure to accept a plea] has nothing to do with excusable neglect for not filing his motion earlier and simply argues the merits of his motion."). Case theory and legal interpretation arguments have also been held to be unrelated to demonstrating excusable neglect. *Espinoza*, 319 Kan. at 657 ("[Defendant] fails to explain why he could not uncover the victim's criminal history record, learn about statutory self-defense immunity, or realize he felt pressured into taking the plea until six years after his plea.").

Arguments related to effectiveness of counsel, coercion, and the defendant's understanding of the plea are contained within a substantive analysis of manifest

11

injustice—not in an excusable neglect analysis. Where a defendant establishes excusable neglect, manifest injustice is evaluated by using three factors: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandably made." *State v. Shields,* 315 Kan. 131, 139, 504 P.3d 1061 (2022) (citing *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 [2006]).

But, as properly identified by the district court at the motion to withdraw hearing, Graham's arguments related to effectiveness of counsel may be applicable to manifest injustice but not to excusable neglect. For example, the source of the alleged pressure or rush to accept a plea is not entirely clear from Graham's brief or the arguments of motion counsel. A reasonable inference could be made that these claims relate to plea counsel's effectiveness, possibly as shown by the impending trial date and the absence of a written plea. Graham herself claimed ineffective representation at the motion to withdraw hearing. Again, though, arguments related to effectiveness of counsel are foreclosed by *Smith*, at least as related to quality of representation.

It could be argued that Graham makes a slightly different argument in this appeal that links effectiveness of counsel and pressure to plea with an absence of knowledge about plea withdrawal. In her brief, Graham asserts that "[s]he was rushed into pleading guilty," followed in the same sentence with a claim that "her counsel did not explain the time frame in which to withdraw her plea under K.S.A. 22-3210." Even so, this argument fails as a version of ignorance of the law under *Ellington*. 314 Kan. at 262.

In conclusion, Graham has failed to show excusable neglect as required by K.S.A. 22-3210(e)(2). The Kansas Supreme Court has established that ignorance of the law cannot establish excusable neglect. Additionally, arguments that counsel was ineffective are best suited for a manifest injustice analysis, which cannot be reached in an out of time

motion to withdraw plea until the defendant demonstrates excusable neglect. Graham's arguments in this appeal amount to either ignorance of the law or relate to substantive claims of manifest injustice. The district court did not err by denying Graham's postsentencing motion to withdraw plea, concluding Graham failed to establish excusable neglect for filing it out of time.

Affirmed.